Case No. 3-17-0702, Leo Dawkins, individually, and his next friend of Gillette Smith-Dawkins, appellant by Michael Reagan, v. Fitness International, LLC, L.A. Fitness, and L.A. Fitness, as we go, athletes by James Rosette. Adjourned. May you proceed. Thank you. May I please report, counsel? My name is Mike Reagan, and together with David Wise, who is sitting at the counsel table, we represent Leo Dawkins, individually, and his next friend, his wife, Donna Dawkins. By its language, the Physical Fitness Facility Act establishes and recognizes the cause of action for a wealth and well-being misconduct. The words of the statute are that a right of action does not exist in connection with the use or non-use of an automated external defibrillator at a facility governed by this Act, except for a wealth and well-being misconduct, provided that, and then it goes into how you establish immunity against negligence, which is to have an ADD, have a printed person, have a plan, etc. It states that otherwise, a cause of action does exist for a wealth and well-being misconduct. Shortening the words of the Act, a right of action does not exist except for a wealth and well-being misconduct. In other words, a right of action does exist for a wealth and well-being misconduct. And the statute, which is the task before the court on this aspect of our argument, cannot be read in any other manner. The defendant wrote that exact conclusion, which we have quoted in our brief, in one of its motions below, stating that such a cause of action for wealth and well-being misconduct exists. The statute establishes and recognizes the cause of action for both use and non-use of an ADD. Defendants' arguments in this court would read, necessarily, out of the statute, non-use, except for, and the recognition of the existence of a cause of action for wealth and well-being misconduct. Common principles of statutory interpretation prohibit that at all. A statute must be read to give meaning to every word, if possible, and no words must be rendered mere surplusage or meaningless. Defendants' reading of the statute completely ignores those rules and has not offered to you any reason in its brief as to why that's not the case. There is no principled reason why non-use should not be regarded just the same as non-use. Both terms appear with equal treatment and equal dignity in the statute. The entire point of the statutory required training is to be able to use the ADD. There's no use for training, and there's much in the statute about training which is required. There's no use for training if the ADD is not going to be used, but it's simply going to hang on the wall as art. All that the statute needs to have said, that there is no need to use the ADD, is only that the facility has to have an ADD. But that would deprive significant parts of the statute of any meaning whatsoever, including the requirement that there not only be a state-approved plan, but that it be implemented, which is the term of the statute. Well, the statute provides under what you consider to be immunization against ordinary negligence. It does, Your Honor. And that would imply either use or non-use, because it uses the word non-use, right? Correct. Okay. So, except for Willful and Wanton County. And that's the only claim that we're appealing to this court. Right. The claim suggests that the statute is clear and that extrinsic aids need not be consulted. But in addition, though, the legislative history here, which we put before the court, completely favors the claim's position. The bill was enacted because an attorney in the Speaker's office died from a sudden cardiac arrest while working out at a sports facility. The American Heart Association and the American Red Cross joined in supporting this bill. Senator Sandoval, without being contradictory to her question, stated that this act allows a right of action in cases where there is a willful or wanton conduct in connection with the use of an AED. And, of course, the statutory language itself, as we've discussed with Justice Goldbridge, talks about non-use but also non-use. So, arguably, under statutory construction, we don't care what the legislative history says. That's correct. And that was the first thing I said, is that we don't think you have to go there. But should you wish to, I'm happy to have you there as well. Defendant has suggested some ideas which I think are easily and respectfully defeated. Defendant argues that conduct which is immunized in the form of only a negligent manner cannot then be the basis of a willful and wanton claim. And this is where the defendant uses his toothpaste back into the tube metaphor. If it's squeezing toothpaste out and it can't be negligence, well, then you can't put it back in and call it a willful and wanton claim. There is an argument, though, that that hasn't been the case with, for example, police officers' conduct. Those are examples of willful and wanton, yet you can't sue them for negligence. Well, I'm not sure I'm following your reasoning, but my point that I've made, perhaps addresses what you're talking about, is that if what defendant says is true, then all of those statutory immunities, the Immunity Act, they go out the window because they simply won't take the general structure. It's the same paradigm. Pardon me? It's the same paradigm. Yes. In the Governmental Immunity Act. Right. Yes. There's lots of them. In fact, most conduct is immunized if it's negligent, but if it's willful and wanton, then there's a cause for action. That was my point. We have examples of that, where we have things that you can't sue for negligence, but you can sue for willful and wanton, which is why we've not devoted a lot of time to the brief. There's simply no support for that proposition. The contrary proposition to what the courts have said. There are lots of examples. Defendant describes great importance to the first sentence of Section 45 of the Fitness Facility Act, which states that the exemptions from civil liability in the AED Act, which was the predecessor, was talking about AED generally, are not to be limited or expanded by the Fitness Facility Act, but the AED Act, the first act, does not require anybody to add an AED, and therefore, whatever it had to say about exemptions really doesn't apply. It does not apply in our case under this statute, where there are requirements. And so that first sentence of Section 45 doesn't inform the second sentence at all. And, of course, this section of statute, Section 45, is captioned liability and is not captioned immunity. Defendant states frequently that Mrs. Daughton's situation is presented as an emergency and that no one can be expected to act in the face of an emergency. But the entire and expressed purpose of this legislation is to deal with emergencies, which the legislature talked about quite a bit. The very nature of an AED is that it is designed to deal with emergencies. The AED Act states that, quote, the General Assembly finds that timely attention in medical emergencies saves lives, and the trained use of automated external defibrillators in medical emergency response can increase the number of lives saved. The Fitness Act, quote, defines a medical emergency and states that an average person can recognize that urgent care is called for. And the definition of the statute of a medical emergency is that it means the occurrence of a sudden, serious, and unexpected sickness or injury that would lead a reasonable person to believe that the person requires urgent medical care. The Fitness Act imposes an obligation upon defendants to be prepared to deal with emergencies. Quote, each person or entity that operates a physical fitness facility must adopt and implement a written plan in responding to medical emergencies. Defendant also states frequently that volunteers at fitness facilities should not be expected to use an AED. There's a number of problems with that argument. The first is that certain members of the staff at the fitness facility are not volunteers, but are rather required by law to be trained users of the AEDs. Defendant was quick to admit that it has such a person on its staff in order to claim immunity from the negligence claim. But defendant cannot now defer to then say that that staff person is only a volunteer who can't be expected to respond in any meaningful way to an emergency. Those staff members must be trained in a manner approved by the state, and the plan which the facility is required to implement must also be approved by the state. That's a useful segue, I suggest, to my next argument, which is that there is also a common law basis for this cause of action. The common law of lettresses and the legislative recognition and creation of the cause of action and supports its existence on an independent basis under the common law. The defendant at fitness, and this is Barnes, were not strangers. They have a specific business relationship with business invite-for and invite-to. This is a, quote, special relationship recognized in Section 314A of the Restatement Report, which is law under the law of Illinois without any question, and the prominent case in that regard is Marshall v. Burger King. Section 1B of Restatement 314A requires that the invite-for, quote, give invitees first aid after it knows or has reason to know that they are ill or injured and to care for them until they can be cared for by others. Comment B states that this duty extends to cases where the illness is due to medical causes. Comment F states that the defendant is to give, quote, such first aid as he reasonably can. The legislature, Illinois, has expressly declared that the use of an AED is first aid in the language of the legislature. The AED Act in its section dealing with the use of AEDs states that it is the intent of the General Assembly to encourage training and life-saving first aid, and the entire structure of the fitness act is to provide a framework for dealing with rapid response to emergencies. In other words, to render first aid. Well, you're really – I mean, this case is basically an argument that there is no duty on behalf of the defendant. Is that correct? And that's roughly – and I'll ask opposing counsel the same question. That's their argument. That's their argument. Yes. And your argument is there is a duty because actions taken or not taken by the defendant, if they arise to willful and wanton conduct, are a cause of action. Correct. That's exactly right. And willful and wanton conduct is not defined in the statute, is it? It is not. So we have to go to the word stew of the courts to figure out what that is. Yes, but there are specific sections of the well-recognized definition. And the trial judge, by the way, never reached that. No, no. He went on the fact that I can't find a duty in the act. Am I correct? That's correct. Okay. And that was the end of the analysis. And we're not saying that a reversal from this court – in fact, we do say a reversal from this court does not mean it's liable. What it means, what it recognizes, is that there's a question of fact. And that was for the jury, it was for summary judgment, it was for something else other than 619. You're saying you stated the cause of action, which you're permitted to do under the act. Correct. And your allegations and your complaint would arise to intentional willful and wanton conduct. Absolutely. That's the essence of our position. And there was never a question raised to whether the allegations were sufficient to constitute willful and wanton conduct. And we also have, as the last point – Which could be a case for a later date. Exactly. All of our rights of discovery were cut off. And, again, no challenges to the facts, but we got no discovery and were told we were prohibited. So, I think perhaps this is a point at which I could talk about Salt v. YMCA, a Second History case. And it's not controlling our case, but it does confirm an important part of my argument. The reason that Salt is not controlling is that the event there happened before the effect of the Fitness Facility Act. And so there's no requirement to have an AED. And, in fact, they didn't have one. However, a key part of the reasoning of the court there is the court held that the defendant there owed plaintiff the duty to render first aid and care for it. In recognition of what we're talking about here, which is Restatement 314A. And the majority opinion said there that the duty was to render whatever first aid that, under the circumstances, they were reasonably capable of providing. And here, in our case, the world is as different here from Salt as is night from day. This defendant is statutorily required to have an AED. And the court there said there was no requirement, which was true. Under the regime in which it was decided, that was true. The defendant, in our case, to use the words of the Salt court, is now required to have a person on staff, quote, to provide such medical care. And, as the court well knows, the requirement of the Fitness Act is that you must have a state-certified trained person on staff whenever the building is open. And the Salt court further grounded its reasoning on the fact that the use of the defibrillator requires specific training. And, of course, the Act here says that you must have a person who has specific training. And, the defendant says, we had one, and he or she was present. My time is getting extraordinarily shorter here. What's the language of the statute due to an allegation of 314 common law liability? What's the scope of the common law liability in light of the statute? With the statute, your argument is it requires willful and wanton. Yes. Other than the willful and wanton difference, which is not controlled because it could either be negligence or willful and wanton. I suggest to the court, to answer your question, is that the scope of the duty is coextensive. It is to render first aid under the common law, 314A. And the legislature recognizes the use of AEDs as being first aid. I would say there is no difference. And they usually reinforce one with each other. But how would negligence apply in light of the statute under the common law theory? That's a great question. And to date, we have not pled negligence. And I believe that the argument could be made that under the common law, we have the right to maintain a clause of action for negligence. That wouldn't be negated by the statute. It might not be negated by the statute, correct. Because the statute contains a different language. Right. No, it doesn't. Thank you. Counsel. May I please report? Counsel. My name is James Rosenick. And I represent the FOA. It's an international LLC in this matter. And I also represent the defendant. It is an international LLC throughout the course of this case and into this appeal. Well, the counsel is wrong about one thing. And it's the biggest thing. There is not a statute in Illinois that requires the application of an AED to a person in an emergency situation. That's not done. It is not in the statute. You didn't hear him read it. You didn't hear him quote it. And in that recitation, he never brought up the biggest thing, which is neither the statute relating to the physical fitness facility or the AED Act require the use, create the duty to use it. It creates the facility must have the existence of it. Is that correct? Have it present, encourages its use. It's a public thing. Kind of like a fire extinguisher. But to not to have one and not to have anyone who knows how to use it, at least there's one person, the statute requires that. And it's the law of this case, and it's not on the appeal before your honors, is that the court, the trial court, made the decision that we were in compliance with this physical fitness act. And therefore, immunity applied for negligence. The important part of that is that in order to be in compliance, you need to have the appropriate medical plan filed with the state. You need to have a working AED, and you need to have the trained user on site. The judge looked at all of those things and found that was true and dismissed the negligence count in the first complaint related to that. And for a second reason, which I think has bearing here, which was not mentioned at all by counsel. And that is that there was an exculpatory clause that specifically barred the plaintiff from suing L.A. Fitness for injuries resulting from her heart attack while using equipment in the premises. In your argument, how do you explain then Section 30D? Oh, yeah, 30D. Well, okay, so this is especially important. 30D of the AED Act you're going to try, and that is the exemption from civil liability. And it specifically says an AED user is not liable for civil damages as a result of any act or omission involving the use, the use of an automatic external defibrillator. It refers to willful and wanton conduct in the use. That's what 30D does. This was never used in this case. What says any act, that would be an act using it, or omission. That would be, omission would be not using it. An act or omission involving the use is what 30D says. And there was no use in this case. Is that an omission? What, the lack of using it? There are omissions that can be involved in the use. Like the failure to properly adhere to PADS. There are things that relate to the use. Yeah, that relates to the use. So how do you explain omission? An omission relating to the use would be something that you didn't do when you used it. What didn't you do? Didn't you follow the directions? Didn't you do something? Now, we're talking about the language that I have in front of me. A right of action does not exist in connection with the use or non-use of an AED. I think what you're referring to, Your Honor, is the Physical Fitness Medical Emergency Preparedness Act. Right. All right. Justice Carter and I were just referring to the AED Act in 30D. So those are slightly different. But I will tell you, though, that the statute that you're referring to, which relates to the physical fitness facilities, states in 210 ILCS 4-45 liability, nothing in this act shall be construed to either limit or expand the exemption from civil liability in connection with the purchase or use of an AED. So that our providing of the AED Act or any other provision of law. So what the Physical Fitness Act is, it's referring to the AED Act. And I would submit to Your Honor that 30D is the persuasive law here that we're applying to. And, again, that goes to the use. Right. It only makes sense. But as you said, the AED Act is mentioned, though, in the Health Facilities Act in the liability section. And it does say that there is the use or non-use of the AED except for willful and wanton misconduct. So it is, there is a cause of action for willful and wanton conduct contemplated under the Health Facilities Act and Regulation Act that specifically mentions the AED Act. So maybe you, you know, it's tied in that way or do you not see that there's any coupling of it that way? What I would suggest, Your Honor, and this is how I read it, and it's a good question. The number one thing is, and that's the first thing I mentioned when I stepped up here, is there is no duty under these acts to use an AED. Therefore, there is no time when, because there is no duty to use it, it has to become willful and wanton. We have the same kind of application of willful and wanton, it's just the intent, that changes. You need the duty to begin with. There's no duty to use this. This is not what the legislature wanted when they enacted the statute. What they wanted was the availability, and specifically they refer to that. They say it's to encourage the use. It says here, if it says to encourage, I guess, under your reading of the combination of these, of the act and that, that's where I was going to, is you've got the language authority deed and you've got the other overriding and referring to this act. Under your theory, the non-use or the omission kind of language would only apply if, upon using it, they have some defect in the equipment, and that defect would arise out of willful, wanton conduct? If they were not in compliance. The section that Justice Holdridge was referring to, that non-use has to relate to someone who's not in compliance. And we are in compliance, it doesn't affect us. So the general language when they're setting up this scheme, when you're reading the statute, I mean the language of these things together, 30D and then this other requirement that's been mentioned, that's, you know, and the whole purpose of all these things to get emergency care, there is never any willful wanton, as long as you just don't use it. So in other words, you get the training, you do things, and something happens, and people just sit there, they don't do anything. Then there's no liability under willful wanton conduct, correct? Well, I think there has to be, I don't believe that that is true. I cannot agree with that. I think that here there is no duty to use it under the statute. So not use, not using, not applying, can't be the basis for willful wanton conduct. So if you've got, so under your theory, and under the language of all these things combined, if you have all the training, you've got the thing there, and so the person who's trained, required to be trained, is in that room, and this emergency comes up, if they just don't touch the equipment, just stand there, watch, there's no liability for willful wanton conduct. A hundred percent. I mean, that's your position. And that's this case, because what we have in this case is, in the pleading, she states that she is receiving CPR. How is that utter disregard? Someone's receiving care. Now we're talking about, oh wait, I'm entitled to the best care. I want a medical device to fly to me in a public place by, you know, an employee of a fitness club who may have training, but they're not a paramedic. And to hold someone like that, whose job is not that profession, to that level of care, and expect that. And not giving is willful wanton. What's the purpose of the training then? The training is that you would think, and maybe some people are different, as you know, and you see that every day. The training is training in the use in part. Training in the use of this equipment. Is that right? Right. It's the training in the use of this equipment. It's not training on the inside what goes through a person's mind. So you're limiting the use of the equipment to when you actually put the pads on the person. Is that correct? Limiting the use of the equipment. But isn't part, I don't know what the training is, but I would imagine part of the training is determining whether or not to use the equipment. Would be step one. Well, I agree with you that way, because not all medical emergencies, and we're Monday morning quarterbacking quite a bit in this lawsuit by the planet. I mean, there are a lot of reasons to collapse in a health club facility. You could be dehydrated. You could have a stroke. You could have an aneurysm. There are a lot of different things to presume. But wouldn't that go to the question of fact where they haven't even gotten to? I mean, they haven't gotten to that part yet because the action was dismissed. So they haven't gotten to whether or not any of that is what actually occurred. A great question. And in a vacuum, if these acts did not exist, what we would have is a woman collapsing in the health club, patrons responding and providing CPR. And you see the de-evolution of the facts throughout the complaints as the plaintiff provided them. But in the complaint before this one, they say they gave CPR all the way up to the time the paramedics arrived, which leads you to believe that the paramedics were summoned and she was receiving CPR. How is that even willful and one? And we know that there's no duty, which is why we're here, to apply it. And every allegation goes to, why didn't you apply this and give me the best medical care? In common law, if we didn't have these acts, like I was saying, we'd look at the Salty case, which says you're not entitled to that. You're a business invitee. We get it. But we have to give you a reasonable amount of care, given the circumstances. And what are the circumstances in this case? That's what the Salty case says. In this case, the circumstances are that she is receiving CPR and that the EMTs are on their way. Who knows when you place the call and somebody's giving CPR? You have to stop CPR to start an AED. They could walk in at any moment. It's a judgment call. It's discretion. And what plaintiff wants this court to do is take a minority position from any place else across the country and impose to take away that discretion from somebody who took a class to become an AED, thinking they were doing a good thing. And then in that moment, maybe they didn't want to. They couldn't feel 100 percent confident. Well, they didn't take the class because they thought they were doing a good thing. They took the class because the statute requires the facility to have a trained person there. Not every person in the facility has to be a trained person. But one person that works there. That's the law. Right. They did. But no one knows. There are a lot of famous expressions that no battle plan survives first contact with the enemy. And Mike Tyson's favorite quote is, everybody's got plans until they get hit. You can plan and plan and plan, but in an emergency situation, you've got a young male desk clerk who's now got to take the shirt off Mrs. Dawkins and apply an AED, when other people are standing around giving her CPR. That's discretion. And what plaintiff is asking you to do is to take that discretion away from an emergency, a person who has training but is a volunteer, and to say that they have to apply an AED no matter what. The statutes don't even say that. To read that into the statutes is wrong. And the common law does not support that duty. You have to apply it in every situation. As I said earlier, not every situation requires that. Isn't that what happens when you do a four-for-one analysis? Factually, you've got a whole body of case law in this state dealing with the difference between negligence and four-for-one conduct. And so the very things you're talking about go into that mix when you're doing a four-for-one analysis. If a fact finder is doing that, whether or not something, those decisions that are made in this emergency, use it, don't use it, stuff like that, are in the context of whether that conduct or lack of conduct was four-for-one, right? Well, there is always a factual analysis in most four-for-one cases. In this one, the complaint related to the failure to use the AED under this physical fitness act. So we're talking about a statute. We're talking in review about whether or not there's a duty. And then if we get to that, if we get to common law, we look at the Salty case, and clearly, you are not entitled to have an AED applied to you as a matter of law. I mean, I think to quote directly from Salty, it says, this duty to all medical care that is reasonably foreseeable might be needed by a patron. It's not something that you have to give as a business owner to a business invitee. You don't have to give every part of it. The plaintiff in this case has complained that she didn't get the best care, not that she didn't get any care. And to say that the people, the patrons, were not giving the care that an employee of the fitness club give, that it has to be that person, how do we know that those people who were giving her treatment didn't have more training? The fact is she was getting CPR. That's cardio and pulmonary. An AED doesn't give you both of those. Two minutes, please. So the fact of the matter is, we are not that person. The Salty case took place before. Right. And what a vision they had. Because that is exactly the situation, and it's an important case today. Most cases are real life. It happened before this case. And that's because they had good reasoning. Because you don't need to have the AED. The invention of this technology is becoming more available to say that you're not required to the best care. This is not an emergency room. It's a fitness club. And we keep it available. We keep it working. We keep somebody trained. That doesn't make us willful and wanton if you have a heart attack and it's not used. So I think that that's the struggle the plaintiff has. They have this hindsight. They have this injury. And they want to point a finger. They want to rewrite the law. And I would ask your honors not to do that. I don't think the trial court fell for that. They were asking for you to affirm the trial court's decision. You found no duty and did not find anything that relates to this. How can you have willful and wanton conduct when she's receiving CPR until the time the paramedics arrive? In an emergency, paramedics arrive. And the court had already determined there was a working AED, that there was a medical plan on file with the state that was all compliance. Further, the plaintiff also waived all liability against the club for injuries resulting from a heart attack. Well, your honors, I think I've actually argued my point. I appreciate your time today. And I would ask you to affirm the trial court's orders and this case. They only have one or two orders. Only one order. Right. That's the order. Thank you. Counsel. Our allegations. We've alleged in great detail, I'm only going to hit a couple of them here, that Mrs. Dawkins collapsed, stopped breathing, and lost her pulse in the public area of the club in the fitness unit. We've alleged that the patients were unsuccessful in their attempts at CPR and shouted to fitness staff for assistance, and that fitness knew that. Fitness knew that its plan required its trained staff to assess for signs of pulse and to follow its AED training, and none of that was done by fitness. Second, the nature of an AED. It is automatic. The statute defines what an AED has to be in order to comply. And it has to be set in an automatic mode. And so you take it down off the wall. It has pictures which show you where to apply the electrodes. You turn it on, and then it on its own makes a decision as to whether it is a good idea or a bad idea to administer a shock. And it tells you, you know, yes or no. This is needed. This is a good idea. This is a bad idea. Don't do it. And then if you accept that, then you just tell it to go to work and administer. It is automatic. It is easy to use. And these people are trained in a manner approved by the state to do it. CPR is not sufficient. It is not at the same level and efficacy as AEDs whatsoever. The definition of willful and wanton misconduct, which is something that the questions of all members, each of the members of the court expects upon, applies here. And so Justice Aldrich led off with the discussion of isn't there a lot to this. Each of you have touched upon various aspects of it. But there is no question as to what the definition, part of the definition is, is that where there has been a failure after knowledge of impending danger to exercise ordinary care to prevent a danger. And that is time-honored, 50 years or more, in fact. It goes way back beyond that. An aspect of willful and wanton misconduct, which is the question of fact. And in this case, it is right with the question of fact. We were deprived of discovery. We were, in this case, just cut off far beyond its time. And we've been asked that just the members be sent back to further proceedings. Thank you, counsel. Thank you. The court will take this matter under advisement and render a decision with dispatch. And at this moment, we'll take a short break.